```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| JOSHUA HOLDSWORTH,<br><br>       Plaintiff,<br>  v.<br><br>UNITED STATES OF AMERICA, and<br>L&D JOHNSON PLUMBING & HEATING,<br>INC., a/k/a U.S. Veterans<br>Construction & Management Corp.,<br><br>       Defendants. | **11-CV-00889**<br>**DECISION AND ORDER** |

## I.  Introduction

Plaintiff Joshua Holdsworth ("plaintiff") commenced this negligence action on October 24, 2011 against the United States of America ("the Government") and L&D Johnson Plumbing & Heating, Inc., also known as U.S. Veterans Construction & Management Group ("L&D") (collectively, "defendants") pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-80.  Plaintiff is seeking to recover monetary damages for personal injuries that he suffered while working on a construction project at the Veteran Affairs Hospital ("the Hospital") in Buffalo New York.  The Government is the owner of the Hospital and L&D was the general contractor of a project to repair and upgrade the VA Hospital's sprinkler system.  Plaintiff's employer, Eastern Tank Services ("ETS"), was a subcontractor for L&D.

## II. Procedural Background

On November 5, 2011, L&D brought a cross-claim against the Government for indemnification or contribution should L&D be found negligent for plaintiff's injuries. On February 17, 2012, the Government filed its first motion to dismiss the action based on lack of subject matter jurisdiction asserting that plaintiff's claims were barred by the FTCA's independent contractor exception, 28 U.S.C. § 2671(a), and the discretionary function exception, 28 U.S.C. § 2680(a). On September 27, 2012, United States Magistrate Judge Leslie G. Foschio granted plaintiff and L&D a 90-day discovery period limited to the independent contractor and discretionary functions exceptions to the FTCA and dismissed the Government's first motion without prejudice. On October 11, 2012, the Government filed cross-claims against L&D for contribution and indemnification, should the Government be found to be culpable for plaintiff's injuries.

On April 25, 2013, following the limited discovery period described above, the Government renewed its motion to dismiss the complaint (Docket No. 37), which plaintiff opposed on August 28, 2013 (Docket No. 46) and L&D opposed on August 30, 2013 (Docket No. 47). Magistrate Judge Foschio filed his Report and Recommendation ("R&R") on September 2, 2014, recommending that this Court grant the Government's motion to dismiss all claims against

it. The matter is now before this Court for determination of plaintiff's Objections to the R&R pursuant to 28 U.S.C. § 636(b)(1).

### III. Factual Background

The R&R contains a detailed recitation of the facts taken from the pleadings and motion papers filed in this action. The Court therefore adopts the "Facts" section in its entirety and will make reference to the facts contained therein. Docket No. 58, p. 5-12.

The Government, on behalf of the Department of Veterans Affairs ("VA"), awarded a contract ("the contract") to L&D for the renovation of the sprinkler system ("the project") at the Buffalo VA Hospital. Vincent Rizzo ("Rizzo"), Engineering Manager for the VA hospital, was responsible for the day to day operations of the engineering and environmental management departments. Robert Reiter ("Reiter"), a VA engineering technician and project manager, was the contracting officer's technical representative for the project.

The contract provided that L&D was responsible for establishing plans and procedures to complete the project, including all decisions regarding the choice of materials and construction methods, the possible use of hazardous materials, and the safety of the worksite. The contract also provided that "[t]he Contractor shall hold and save the Government, its officers and agents, free and harmless from liability of any nature occasioned by the Contractor's performance." Contract § 1.11.A. As the contractor,

L&D was responsible for quality control, risk assessment, safety, and Occupational Safety and Health Administration ("OSHA") compliance and worksite inspections for the project. The contract at 37(C.2-C.3) and § 2.7 at 41. The contract also incorporated by reference several provisions of the Federal Acquisition Regulations, including 48 C.F.R. § 52.236-2, which requires the contractor to provide prompt written notice to the contracting officer of any "unknown physical conditions at the site, of an unusual nature, which differ materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract." 48 C.F.R. § 52.236-2(a). Upon receipt of the written notice, the Contracting Officer is then required to investigate the site conditions and make an equitable written adjustment of the contract concerning the cost and time allotted for the project in the event of material differences in worksite conditions. *See* 48 C.F.R. § 52.236-2(b). No equitable adjustment was allowed absent the written notice. *See* 48 C.F.R. § 52.236-2(c).

Under 48 C.F.R. § 52.236-3, L&D was required to take the reasonably necessary steps to ascertain the nature and location of the work, investigate and satisfy itself as to the conditions which could affect the work or its cost, including the equipment and facilities needed before and during work performance and any obstacles reasonably ascertainable during a site inspection. L&D

was responsible for obtaining insurance at its own expense and for the safety of the worksite and compliance with all applicable laws and codes for the duration of the project. The contract §§ 4.27, 4.7.

The work on the project required the relining of two 25,000 gallon water storage tanks located on the 14th floor of the hospital. The workers were required to enter the tanks through a manhole to sandblast and re-coat the interior. During a daily inspection of the 14th floor during the project, work was halted to address a safety issue concerning communication between workers inside and outside the tanks, and how a worker inside a tank could be retrieved. It was decided that an interior worker would communicate by pounding on the tank, and a device installed by subcontractor ETS, which consisted of a tripod and crank with a cable over the manhole, would aid in retrieving someone who may become injured or ill while working inside the tank.

On October 30, 2008, plaintiff, while working on the project as an employee of ETS, was attempting to exit the first tank when he became stuck in a manhole located under ductwork with only 15 inches of clearance causing an injury to his back. At some point during this incident, the owner of ETS (plaintiff's brother) recommended adding a second manhole on the end cap of the second tank. After determining that the OSHA requirements did not necessitate a second access point in the tank, Reiter denied the

request to install a second manhole in the second tank.  For unrelated reasons, the second tank was not relined until two years later, without the addition of a second access point.

## IV.  Discussion

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of Federal Rules of Civil Procedure, this Court must make a de novo determination of those portions of the R&R to which objections have been made.  However, "in a case where a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Butto v. Collecto*, Inc., 290 F.R.D. 372, 379 (E.D.N.Y. 2013) (internal quotation marks omitted).  Here, the R&R found that all of the claims against the Government should be dismissed because the Federal Tort Claims Act (the "FTCA"), under which plaintiff brought his suit against the Government, contains two exceptions: (1) the independent contractor exception ("ICE"), 28 U.S.C. § 2671 ("§ 2671"), and (2) the discretionary function exception ("DFE"), 28 U.S.C. § 2680(a) ("§ 2680") relevant to this case.  In its opposition to the Government's motion to dismiss, plaintiff and L&D asserted that neither exception to the FTCA applies.

Plaintiff contends that ICE does not apply because the complaint asserts negligence allegations against government employees, including creating a hazardous condition by defective

design of the water tank, and failing to either add a second manhole to the first tank or to alter the ductwork located over the manhole. Plaintiff's Memorandum at 3-6, 11-13. Both Plaintiff and L&D argued that ICE does not apply because the Government retained control over the work to be performed under the contract. Plaintiff's memorandum, p. 6-10; L&D's memorandum, p. 2-9.

**IV. Objections to the Report and Recommendation**

    A.   <u>Independent Contractor Exception</u>

In its Objections, filed October 10, 2014, L&D asserts that ICE is inapplicable because plaintiff's accident did not result from L&D's "method of working" and, based on its denial of the request to install a manhole in the second tank, the Government would have denied a request to install a second manhole in the first tank. L&D also notes that Rizzo testified in his deposition that adding another manhole "was at [the] discretion of contractor L&D as to how to execute its work," but he later stated that "adding another access hole would itself be major work, and so, clearly beyond the scope of the project." L&D's Objections, p. 4 (internal quotation marks omitted). The Government responds that the relevant portions of the contract establish that "'L&D was responsible for the day-to-day supervision of the Sprinkler Project' as 'demonstrated by the Contract as well as by the deposition testimony of VA employees Reiter, Rizzo and Reisman.'" The Government's response to Objections, p. 6, quoting R&R, p. 19.

7

"It is well established that '[t]he United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *Kwitek v. U.S. Postal Serv.*, 694 F. Supp. 2d 219, 223-224 (W.D.N.Y. 2010), quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "Congress can waive the government's sovereign immunity, but only through clear and unequivocal statutory language, and waivers of sovereign immunity and their conditions must be strictly construed in the government's favor." *Id*. at 224. Where the relationship between the government and a contracting outside vendor is in dispute, the terms of the contract should be reviewed to determine "(1) whether the government controls the detailed physical performance of the contractor, and (2) whether the government supervises the day-to-day operations of the contractor." *Id*., citing *Moreno v. United States*, 965 F.Supp. 521, 524 (S.D.N.Y. 1997) and *Roditis v. United States*, 122 F.3d 108, 111 (2d Cir. 1997). Where the terms of the contract are unambiguous, courts should enforce the plain meaning of the agreement. *See PaineWebber, Inc. v. Bybyk*, 81 F.3d 1193, 1199 (2d Cir.1996).

Focusing upon the language of the contract, as the Court is required to do, it is clear that the Government delegated responsibility for maintenance of the project to L&D, and, moreover, there is no evidence in the record that the Government

retained daily or substantial control over maintenance. In support of its contention that the Government retained control over the project, L&D points to: (1) what it considers "a dangerous design defect in the premises;" (2) the lack of a second access point in the first tank; and (3) its supposition that if L&D had requested a second manhole in that tank, the Government "would have denied that costly work request." L&D's Objections, p. 6. The Government notes, however, that pursuant to the contract, L&D was required to provide prompt, written notice of any unknown physical conditions of an unusual nature at the site that differed materially from those ordinarily encountered and generally recognized as inhering in work provided for in the contract. The Government's response to Objections, p. 7. The Government concedes that it held weekly construction progress meetings with L&D, conducted safety meetings prior to commencement of the project, and "visited the site regularly but for brief periods of time for inspection of the work." The Government's response to Objections, p. 8.

Here, the R&R correctly states that the Government had delegated the responsibilities of daily supervision and management of the project facilities and worksite and worker safety to L&D and retained no authority to control the detailed physical performance of the contractor. L&D was responsible for establishing plans and procedures to complete the project, including construction methods and the safety of the worksite, quality control, risk assessment,

9

worker safety, OSHA compliance and worksite inspections. Moreover, under the contract, L&D was required to provide prompt written notice to the Government's contracting officer of any unknown and unusual physical conditions at the site that "differ materially from those ordinarily encountered and generally recognized as inhering in work of the character provided for in the contract." L&D was also responsible for supervising any subcontractors (plaintiff's employer in this case) including safety and quality of job performance and coordinating and monitoring said performance. It is clear from the evidence in the record, including the testimony given by Rizzo, Reiter, and Reisman, that the Government retained the authority to inspect the project's progress under the contract and for conformity with applicable laws, regulations, and codes.  L&D was responsible for maintaining the proper insurance, directly supervising the  worksite, complying with applicable statutes, and was generally responsible for worksite safety.

Consequently, the Court finds L&D's Objections to the R&R's application of the "independent contractor" exception here to be unpersuasive.  The Court further rejects L&D's assertion that because VA safety manager Heidi Reisman declined subcontractor ETS's request to install a second manhole in the second tank, the Government would have also refused a request by L&D to install a second manhole in the first tank.  This is not supported by the record.  L&D's responsibility under the contract to assess the

safety of the project worksite included the first tank. The benefit of hindsight does not absolve the contractor of this responsibility based on a request made by ETS after plaintiff's accident on a different tank without the same alleged hazards. Moreover, the R&R notes that the Government was not advised of plaintiff's accident and injuries until the commencement of this action, and no change order was requested for an additional access point in the first tank.

The Court adopts this portion of the Report and Recommendation in its entirety and dismisses all claims against the Government pursuant to the independent contractor exception.

B. <u>Discretionary Function Exception ("DFE")</u>

In the R&R, Judge Foschio also found that the DFE exempts the Government from liability under the FTCA for negligent design of the first tank facility and failure to warn because the records establishes that the Government's decision not to re-design the subject tank or the location of the surrounding ductwork was an exercise of discretion "grounded in economic policy considerations." R&R, p. 31-32. In its Objections, L&D asserts that this exception is inapplicable to its claim of negligent design of the first water tank and/or placement of the tank and overhead ductwork because the Government has failed to demonstrate that its decision to install the tank's manhole under the ductwork

was susceptible to policy analysis or justification. Objections, p. 7-11.

The determination as to whether the DFE applies involves a two-part inquiry: (1) whether the challenged governmental conduct was discretionary and, (2) if so, was that conduct based on considerations of public policy. *See Berkovitz v. United States*, 486 U.S. 531, 536 (1988). The FTCA does not apply to "claim[s] based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty . . . whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). "If there is a statute, regulation, or policy requiring a specific course of action for a government employee to follow 'then there is no discretion in the conduct for the discretionary function exception to protect.'" *Brotman v. United States*, 111 F. Supp. 2d 418, 423 (S.D.N.Y. 2000), quoting *Berkovitz*, 486 U.S. at 536.

The Court rejects L&D's contention that the Government's conduct with respect to the design and placement of the access point in the first tank "are not susceptible to any policy analysis" (Objections, p. 12) and adopts the R&R's findings with respect to the DFE in its entirety. In his complaint, plaintiff asserts that the manhole in the first tank was a dangerous hazard due to the inadequate size of the manhole, the placement of the manhole directly under the duct work, and the ladder that was welded to the manhole at a 45 degree angle. It is further alleged

that the Government was requested to add a second manhole to both water tanks and reroute the duct work but that, despite having knowledge of these defective conditions, the requests were refused. The record is clear, however, that a request was not made to add a second manhole to the second tank until after plaintiff's accident in the first tank.

Moreover, the R&R takes note of L&D's documented belief that it "had no reason to include the cost of moving the manhole in its bid [for the project], because [L&D] had no reason to regard the manhole's location as unsafe, nor to anticipate that a company engaged in the business of relining water storage tanks, such as the plaintiff's employer [ETS], would assign the task to a large, tall person, such as the plaintiff." Johnson Declaration ¶ 10; *see also* R&R, p. 32-33. L&D further concluded that "if the plaintiff indeed had difficulty entering or exiting the tank, and injured himself in the process, it was not because of the manhole's location but because [plaintiff] was not fit for this particular job." *Id.* ¶ 10. The Court finds that the record clearly establishes that the Government's decision not to install a second manhole in the tank or alter its location or the location of the ductwork, in anticipation of the type of worker fitting plaintiff's specifications, was a policy decision which precludes the Government's liability under the discretionary function exception.

Accordingly, the Court adopts the R&R in its entirety and the claims against the Government pursuant to the independent contractor and the discretionary function exceptions to the FTCA are dismissed.

**V.   CONCLUSION**

Based on the foregoing, the Court adopts the Report and Recommendation of Magistrate Judge Leslie G. Foschio in its entirety.  The Government's motion to dismiss (Docket No. 37) is therefore granted and all claims against the Government are dismissed pursuant to the independent contractor and the discretionary function exceptions to the FTCA.  The case is transferred to Judge Arcara for further proceedings as to the remaining issues in this case.

**ALL OF THE ABOVE IS SO ORDERED.**


                                      **S/Michael A. Telesca**
                                    _____
                                       HON. MICHAEL A. TELESCA
                                    United States District Judge

Dated:    June 28, 2016
          Rochester, New York.